MALONE et al. v. ALDERDICE et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1914.)

No. 4021.

*(Syllabus by the Court.)*

1. INDIANS (§ 13*)—COMMISSION TO FIVE CIVILIZED TRIBES—JURISDICTION—JUDGMENTS—CONCLUSIVENESS.

The Commission to the Five Civilized Tribes was a quasi judicial tribunal empowered to determine who should be enrolled as citizens and freedmen of those tribes, what lands should be allotted to each, and in what way, and its adjudication of those questions and of every issue of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

law and fact it was necessary for it to determine in order to decide them is conclusive and impervious to collateral attack.

But its decision, recital, or report regarding issues whose determination was not indispensable to enable it to decide who should be enrolled, what land should be allotted to those enrolled, and how, is, in the absence of special legislation such as the Act of May 27, 1908, c. 199, 35 Stat. 313, without judicial or other conclusive effect.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13.*]

2. INDIANS (§ 13*)—STATUTES (§ 267*)—RETROACTIVE OPERATION—FIVE CIVILIZED TRIBES—ENROLLMENT—RECORD OF AGES.

The Commission had no jurisdiction in making its enrollment of the citizens and freedmen of the tribes to determine and conclusively adjudge their respective ages.

In the determination of rights which accrued and of the effect of transactions concluded prior to May 27, 1908, the enrollment records of the Commission are not conclusive evidence of the age of any Indian citizen or freedman enrolled thereon.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13;* Statutes, Cent. Dig. §§ 350–359; Dec. Dig. § 267.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by Lewis B. Malone and J. G. Rafter against J. H. Alderdice and M. Shultise. Judgment for defendants, and plaintiffs appeal. Affirmed.

John B. Campbell, of Muskogee, Okl. (William O. Beall and John B. Meserve, both of Muskogee, Okl., on the brief), for appellants.

Robert J. Boone, of Tulsa, Okl. (George C. Butte and S. H. Lattimore, both of Muskogee, Okl., and John H. Carter, of Tulsa, Okl., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. This case presents one question. In the determination of rights which accrued and of the effect of transactions which were concluded prior to May 27, 1908, are the enrollment records of the Commission to the Five Civilized Tribes conclusive evidence of the age of an Indian citizen or freedman recorded thereon? The Act of May 27, 1908, c. 199, § 3, 35 Stat. 313, provides that the enrollment records of the Commissioner to the Five Civilized Tribes "shall hereafter be conclusive evidence as to the age" of any enrolled citizen or freedman of those tribes. Mariah Henderson was such a citizen and the parties to this suit have agreed that these are the material facts in this case: She was a minor when on September 1, 1898, she was enrolled a Creek citizen. The enrollment records show her age to have been eight years at that time. The age of her majority was 18 years, so that according to these records she would have been of age in September, 1908. The fact was that she was of age on and prior to August 13, 1907. The defendants claimed title to lands allotted to her under a deed made by her for a valuable consideration on August 13, 1907, and the plaintiffs under a like deed of the same lands made by her

on October 8, 1908, for a similar consideration. The plaintiffs contend that, although she was in fact of age when the former deed was made, yet that deed was void because the enrollment records constituted conclusive evidence that she was not 18 years of age prior to September 1, 1908.

[1] The Commission to the Five Civilized Tribes which made the enrollment of their citizens and freedmen was a quasi judicial tribunal empowered to determine who should be enrolled and what lands should be allotted and in what way it should be allotted to every citizen and freedman, and its adjudication of these questions and of every issue of law and fact that it was necessary for it to determine in order to decide these questions is conclusive and impervious to collateral attack. But its determination, recital, or report regarding issues not material to its answers to the questions who should be enrolled and what lands should be allotted to them and how, is, in the absence of special legislation such as the act of May 27, 1908, without judicial or other conclusive effect. Kimberlin v. Commission to Five Civilized Tribes, 104 Fed. 653, 662, 44 C. C. A. 109, 118.

The question in this case becomes, therefore, was it material to the answer to those questions for the Commission to decide and adjudge the exact age of Mariah Henderson and when her minority would cease? In support of their argument for an affirmative answer to this question, counsel for the plaintiffs review the acts of Congress of March 3, 1893, c. 209, 27 Stat. 645; of June 10, 1896, c. 398, 29 Stat. 339; of June 28, 1898, c. 517, 30 Stat. 495; of March 1, 1901, c. 676, 31 Stat. 861; and of June 21, 1906, c. 3504, 34 Stat. 340. They challenge our attention to the facts that the allotment of the lands of the tribes was based on the rolls of their citizens and freedmen prepared by the Commission, that section 21 of the Act of June 28, 1898, provided that "said Commission shall make such rolls descriptive of the persons thereon so that they may be thereby identified, and it is authorized to take a census of each of said tribes, or to adopt any other means by them deemed necessary to enable them to make such rolls" (30 Stat. 503), that the Creek agreement of March 1, 1901, 31 Stat. 861, provided that all citizens living on the 1st day of April, 1890, entitled to be enrolled under section 28 of the Act of June 28, 1898, 30 Stat. 495, and all children born to citizens so entitled to enrollment up to and including the 1st day of July, 1900, and then living should be placed on the rolls made by said Commission, and that the rolls so made when approved by the Secretary of the Interior should be the final rolls of citizenship of said tribe upon which the allotment of all lands and the distribution of all moneys and other property should be made (section 28, 31 Stat. 870), that allotment for any minor might be selected by his father, mother, or guardian in the order named and should not be sold during his minority, that allotments might be selected for prisoners, convicts, and aged and infirm persons by their duly appointed agents and for incompetents by guardians, curators, or suitable persons akin to them (section 4, 31 Stat. 863), that selections of homesteads for minors, prisoners, convicts, incompetents, and aged and infirm persons who could not select for themselves might be made in the manner pro-

vided in that act for the selection of their allotments (section 7, 31 Stat. 863), and that the acceptance of deeds of minors and incompetents by persons authorized to select their allotments for them should bind such minors and incompetents to their assent to the allotment and conveyance of all the other lands of the tribe (section 23, 31 Stat. 868), and that the Act of June 21, 1906, provides that a permanent record book of the rolls should be made and that a copy thereof should be recorded in the office of the recorder of each recording district (34 Stat. 340).

Upon these provisions of the act of Congress counsel base the proposition that the adjudication of the age of each citizen, and especially of each minor, was indispensable to the decision of his claim to enrollment. The position is not without persuasive power when a general view of this legislation is taken, but when these statutes are analyzed and the real issue, the question whether or not it was essential to the determination of the issue who should be enrolled that the Commission should adjudge when the minority of each minor would cease, is kept constantly in mind the force of the argument disappears. The provision of the Act of June 28, 1898, that the Commission should make the rolls descriptive of the persons thereon so that they might be identified falls far short of granting jurisdiction to that Commission to adjudge conclusively on what day each minor on those rolls would attain his majority and thus to determine when he could buy, sell and convey property free from the disqualifications of his minority. As well might it be claimed that the Commission's description on its roll of a male as a female would conclusively adjudge that he was without right to marry a woman, or that the recital of the ages of minor heirs as a matter of description in the record in a probate court of the administration and distribution to them of the estate of their ancestor would conclusively adjudge the time when their respective minorities would cease. This was not the purpose or the effect of this provision of the act of 1898. It was limited in object and in result to the making of a description of the persons enrolled for the purpose of their identification and not for the purpose of the final adjudication of the extent and limits of their disqualifications by reason of their respective ages or otherwise.

It is true that it was necessary for the Commission to determine in making its rolls whether or not certain applicants were born before July 1, 1900, but that fact clearly gave it neither excuse nor power to adjudge the limits of the respective minorities of enrolled minors.

[2] It is also true that in making the allotments it was essential to the discharge of its duty that the Commission should decide at the time each citizen or freedman made his selection of his allotment, and also at the time he made his selection of his homestead, whether or not he was a minor in order to determine whether his selection must be made by himself or by another. But it was also indispensable for it to determine at such times in each case and for the same reason whether or not the applicant was a prisoner, a convict, an incompetent, or an aged and infirm person. It was not, however, indispensable to the complete exercise by the Commission of its jurisdiction here, nor had it the power to determine how long after the selection of any minor, pris-

oner, convict, incompetent, or aged and infirm person his disability would continue, and there are two unanswerable reasons why the provisions of the acts of Congress with reference to the allotments failed to give jurisdiction to the Commission conclusively to adjudicate by its enrollment of the citizens and freedmen of these tribes their respective ages and the time limits of the respective minorities of the minors: First, none of those provisions granted jurisdiction to the Commission in making the enrollment to adjudge the ages of the minors, nor was it necessary for that Commission in deciding who were citizens and freedmen to determine anything concerning their ages except that they were born before July 1, 1900; second, none of the provisions regarding the allotments required the Commission to do, or granted it the power to do, more regarding the ages of those enrolled than to determine at the times of his selections whether each allottee was then a minor or otherwise disqualified, and this requisition and power gave it no jurisdiction or authority to adjudge conclusively the extent or limits of their disqualification. And our conclusion is that the Commission to the Five Civilized Tribes had no jurisdiction in making its enrollment of their citizens and freedmen to determine and conclusively adjudge their respective ages. The result is that in the determination of rights which accrued and of the effect of proceedings which were concluded prior to May 27, 1908, the enrollment records of the Commission are not conclusive evidence of the age of any Indian citizen or freedman. Hegler v. Faulkner, 153 U. S. 109, 117, 118, 14 Sup. Ct. 779, 38 L. Ed. 653; Williams v. Joins, 34 Okl. 733, 126 Pac. 1013, 1015; Perkins v. Baker (Okl.) 137 Pac. 661, 663.

The court below was of this opinion, and its decree is affirmed.